IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

D.A.P., by next friend, Charlotte Perry,    )
                                             )
                   Plaintiff,    )
                                             )
                   v.    )    CV 313-030
                                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social Security    )
Administration,[1]    )
                                             )
                   Defendant.    )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Charlotte Perry ("Plaintiff"), proceeding on behalf of her grandson, D.A.P., ("Claimant") appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for SSI on behalf of Claimant on December 29, 2009, alleging a disability onset date of August 31, 2001. Tr. ("R."), pp. 124-27. The Social Security Administration denied Plaintiff's application initially, R. 74-77, and on

---

[1]For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

reconsideration, R. 84-87. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 88-90, and the ALJ held a hearing on November 16, 2011. R. 38-71. At the hearing, the ALJ heard testimony from Plaintiff and Claimant, who were represented by counsel. Id. On December 16, 2011, the ALJ issued an unfavorable decision. R. 17-37.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since December 29, 2009, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairment: borderline intellectual functioning ("BIF") (20 C.F.R. § 416.924(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)). Thus, the claimant has not been disabled, as defined by the Social Security Act, from December 29, 2009, through December 16, 2011 (20 C.F.R. § 416.924(a)).[2]

R. 23-32.

When the Appeals Council denied Plaintiff's request for review on March 19, 2013, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or

---

[2]While Claimant's alleged onset date was August 31, 2001, SSI benefits cannot be paid until the month after an application is filed and all other requirements for eligibility are met. 20 C.F.R. § 416.335. As Plaintiff filed the application on behalf of Claimant on December 29, 2009, the relevant time period under consideration began, at the earliest, in December 2009. See Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 267 n.2 (11th Cir. 2011) (*per curiam*).

remand of the adverse decision.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in determining that Claimant did not meet Listing 112.05(D), (E)(2), or (F), all of which pertain to intellectual disability. Plaintiff contends the ALJ improperly ignored (1) Claimant's full scale IQ score as determined by Dr. Marvin Long on July 26, 2011, and (2) Claimant's attention deficit hyperactivity disorder (ADHD), seizure disorder, and emotional behavior disorder when finding that there was no evidence of a physical or mental impairment imposing another significant functional limitation. (See doc. no. 17 ("Pl's Br."), pp. 13-17.) Alternatively, Plaintiff argues that the case should be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider new evidence in the form of a Psychological Assessment Report performed by Dr. Michael P. Rose on July 3, 2013, and a Psychological Evaluation performed by Dr. Long on August 13, 2013. (See doc. no. 18, ("Pl's Amended Br."), pp. 3-5.) Plaintiff asserts that this new evidence, in conjunction with Dr. Long's 2011 evaluation, show the ALJ erred in determining that Claimant's impairments did not functionally equal the Listings by having a marked limitation in two domains of functioning or an extreme limitation in one domain of functioning under 20 C.F.R. § 416.926(b)(1). (Id. at 6-8.)

The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 19 ("Comm'r's Br.").) Additionally, the Commissioner maintains that the case should not be remanded for the ALJ to consider the new evidence because it would not change the ALJ's decision. (Id. at 13-17.)

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions:  (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards.    Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).    When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Cornelius, 936 F.2d at 1145.  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Id.  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Determined that Claimant Did Not Meet Listings 112.05(D), (E)(2), or (F).

Plaintiff contends the ALJ made two mistakes when determining that Claimant did not meet Listings 112.05(D), (E)(2), or (F). First, the ALJ erred in failing to accept the full scale IQ score of 61 as determined by Dr. Long in July 2011 because the ALJ is required to use the lowest IQ score in determining Listing 112.05, and the reasons the ALJ gave for disregarding the IQ score are not contrary to the score. (Pl's Br., pp. 13-15.) Second, the ALJ ignored evidence of Claimant's ADHD, seizure disorder, and emotional behavior disorder when finding that there was no evidence of a physical or mental impairment imposing another significant functional limitation. (Pl's Br., pp. 15, 16, 17.)

### 1. The Three-Step Sequential Process to Evaluate Disability in Children.

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the

claimant is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will not be found disabled. Id. § 416.924(d)(2).

The claimant bears the burden of presenting specific medical findings to show he meets a Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam). In order to show that his impairment meets a Listing, a claimant needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

With respect to the Listings in 112.05, the claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning," as well as the additional criteria contained in each sublisting as outlined below. 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05; see also Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012) (per curiam) ("As both the Listings and our cases make plain, a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05 or 112.05.").

For Listing 112.05(D), the claimant must show a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function. 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05; Gray *ex rel.* Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (*per curiam*).

For Listing 112.05(E)(2), based on his age, Claimant must show a valid verbal, performance, or full scale IQ of 60 through 70 resulting in at least one of the following:

> 1. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

> 2. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, 112.02(B)(2)(b)-(d).

For Listing 112.05(F), based on his age, Claimant must show that he meets Listing 112.05(B)(2)(a) and has a physical or other mental impairment imposing an additional and significant limitation. 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05. Listing 112.05(B)(2)(a) requires:

> Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication.

## 2. The ALJ Properly Rejected the IQ Score Offered by Dr. Long.

Plaintiff argues that the ALJ erred in failing to accept the full scale IQ score of 61 as determined by Dr. Long, a psychologist who conducted an independent psychological evaluation in July 2011 at the behest of Drs. Carl Bedingfield and Chris Carswell. Plaintiff argues the ALJ is required to use the lowest IQ score in determining Listing 112.05, and the reasons the ALJ gave for disregarding the IQ score do not, in fact, contradict the score. (Pl's Br., pp. 13-15.) Plaintiff asserts that if the ALJ had properly accepted Dr. Long's IQ score, Claimant would have met Listings 112.05(D) and (E)(2), which explicitly require a valid verbal, performance, or full scale IQ of 60 through 70. (Id. at 13-17.) Plaintiff contends Listing 112.05(F) was also met because the IQ score satisfied the requirement of a marked impairment in age-appropriate cognitive/communicative function. (Id. at 13-17.) As explained below, however, the ALJ properly relied on substantial evidence in finding that the full scale IQ score proffered by Dr. Long was inconsistent with other evidence in the record and should be disregarded.

As an initial matter, contrary to Plaintiff's assertion, the ALJ is not required to accept the lowest IQ score. Plaintiff correctly notes that, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05." 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05; see also Ambers v. Heckler, 736 F.2d 1467, 1470 (11th Cir. 1984) (explaining same principle for Listings under 12.00). However, the Eleventh Circuit has recognized "that a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent

with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ determined that Claimant did not satisfy Listing 112.05 because Claimant obtained a valid full-scale IQ of 80 on a Wechsler Intelligence Scale, Fourth Edition, test ("WISC-IV") administered by Susan F. Davenport, Ph.D., on November 24, 2008. R. 23, 203, 418-419. Dr. Davenport administered this test through the school system. Id. In accepting Dr. Davenport's score and rejecting Dr. Long's score, the ALJ considered two pieces of evidence. First, as Claimant's treating physician Dr. Joseph Trasmonte noted on October 17, 2011, Claimant's school would not accept the scores from Dr. Long's independent testing in considering him for special education services, but instead recognized Dr. Davenport's scores as valid because they were consistent with Claimant's "high" Criterion-Referenced Competency Test ("CRCT") scores. R. 23, 26, 592.

Second, the ALJ found that Dr. Long's opinion was tempered by Claimant's actual performance in his classes as noted by Ms. Julee Bailey, Claimant's Special Education teacher at East Laurens Elementary School, in a statement from February 2011. R. 26, 596. Ms. Bailey stated that Claimant was successful in his special education classes as long as the following modifications were provided: small group,

extended time, one-on-one help, material read aloud to him, peer teaching, reduced amount of work, and daily reading centers with the special education teacher. Id. Plaintiff asserts Ms. Bailey's comments do not relate to the IQ score, Pl's Br., p. 14, however, this argument is belied by the fact that Ms. Bailey's comments about his daily activities and behavior in his classes are directly inconsistent with the IQ score reported by Dr. Long. Indeed, Ms. Bailey described Claimant as a "great student who is eager to learn" and that "he may struggle in certain areas but he is *making a great deal of progress in this setting*." Id. (emphasis added).

Plaintiff also challenges the ALJ's reliance on Claimant's performance in special education classes, arguing that receiving special education in all academic subjects supports a finding that Claimant met one of the Listings. (Pl's Br., p. 14.) To the contrary, however, an ALJ may properly rely upon a claimant's performance in special education classes for purposes of determining whether the claimant meets the relevant Listings for intellectual disability. See Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (*per curiam*) (substantial evidence supported ALJ's decision that claimant did not meet Listing 12.05(C) where he found that claimant, *inter alia*, "did well in special education classes"); see also Good v. Astrue, 3:11-CV-384-J-JRK, 2012 WL 3893550, at *5 (M.D. Fla. Sept. 7, 2012) (substantial evidence supported ALJ's decision to assign little weight to claimant's IQ scores where, *inter alia*, he had completed twelve years of schooling in special education classes).

Accordingly, the ALJ correctly rejected Dr. Long's full-scale IQ score because it was inconsistent with the IQ scores reported by Dr. Davenport, his high CRCT scores, and his performance in school. Lowery, 979 F.2d at 837.

### 3. Plaintiff Failed to Establish That He Had Another Physical Or Mental Impairment.

Even if the ALJ had accepted the IQ score provided by Dr. Long, the ALJ properly found that Claimant did not meet Listings 112.05(D), (E)(2), or (F) because "there is no evidence of a physical or mental impairment imposing another significant limitation of function." R. 24. Indeed, at Step Two of the sequential evaluation the ALJ found that BIF was Claimant's only severe impairment. R. 23. The ALJ found that Claimant's other alleged impairments, including disruptive behavior disorder, ADHD, and seizure disorder, were not severe. Id. Substantial evidence supports all of these findings.

The ALJ first noted that Claimant's alleged disruptive behavior disorder "was ruled out by the school psychologist and had not been mentioned by any treating physician." R. 23. When Dr. Davenport diagnosed Claimant with disruptive behavior disorder in November 2008, she noted that he had a Global Assessment of Functioning ("GAF") of 65, which indicates mild symptoms. R. 25, 217, 422. The ALJ also noted that school psychologist Sabrina Tanner, Ed.S, included Dr. Davenport's diagnosis in Claimant's February 2009 psychological evaluation, finding that he was "generally functioning pretty well." Id.

As to Claimant's alleged ADHD, the ALJ found that it was "well controlled with medication since at least May 20, 2010. R. 23. Indeed, the ALJ cited that Dr. Trasmonte's notes showing that Claimant had a good attention span on June 9, 2011, and has been able to pay attention without any problems since starting on Concerta on May 20, 2010. R. 25, 572. Additionally, the ALJ discussed Dr. Carswell's statements in his August 2, 2010 Childhood Mental Impairment Questionnaire that Claimant was

compliant in taking Concerta and had no functional limitations associated with ADHD. R. 25, 554.

Lastly, as to Claimant's seizure disorder, the ALJ stated that he "has not had any seizure activity since the earliest onset date the claimant can establish." R. 23. The ALJ noted that Claimant admitted that his seizures are "pretty much controlled" when on medication and cited Dr. Trasmonte's treatment notes in June and October 2011 that his seizures were "well controlled" by medication. R. 25-26, 572-73, 591-93. Additionally, Plaintiff concedes that Claimant's seizure disorder "appears to be under control." (Pl's Br., p. 15.)

In sum, even if Claimant's IQ reported by Dr. Long was valid, which it was not, the evidence of record did not demonstrate that Claimant had a physical or mental impairment imposing another significant limitation of function so as to satisfy any of the relevant listings. See 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05. The ALJ's findings in this regard are proper, sound, and supported by substantial evidence.

**B.**     **A Remand For the ALJ to Consider Dr. Rose's July 3, 2013 Psychological Assessment Report and Dr. Long's August 13, 2013 Psychological Evaluation Is Not Appropriate in this Case.**

Plaintiff contends that her case should be remanded to the ALJ pursuant to sentence six of § 405(g) for consideration of two new exams, i.e., a Psychological Assessment Report completed by Dr. Rose on July 3, 2013, and a Psychological Evaluation performed by Dr. Long on August 13, 2013. (See Pl's Amended Br.) Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99

F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Social Sec., 457 F. App'x 850, 853 (11th Cir. 2012) (*per curiam*) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable."). In order to demonstrate that remand is appropriate, a claimant must show: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (*per curiam*) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

In order to be material, new evidence must relate to the period on or before the date of the ALJ's decision. See Enix, 461 F. App'x at 863 (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (*per curiam*)) (providing that, in order to be probative of whether the person was disabled during the period under review, evidence must relate to that period); see also Lipscomb v. Comm'r of Soc. Sec., F. App'x 903, 907 (11th Cir. 2006) (*per curiam*) (questionnaire related to the time period under consideration by ALJ because doctor "indicated that his questionnaire answers related to his perception of [claimant's] condition as it existed prior to the ALJ's decision" by basing the opinion on both his treatment records and those from other doctors, all dated during the relevant time period).

Here, Plaintiff points to several pieces of information in each exam to support her contention that they are material. First, with respect to Dr. Rose's July 3, 2013 report, Claimant attained a full scale IQ of 81, which Plaintiff contends is merely the result of

Claimant "learning" from taking the test multiple times, and a perceptual organization index score of 61 on a WISC-IV administered that day. (Doc. no. 18-1, p. 4.) Additionally, as to adaptive behavior, Dr. Rose reported that Claimant's functional independence was limited and reflected an age equivalence of five years old, with a percentile rank of 0.1. (Id. at 5.) Claimant also met the criteria for a non-specific cognitive disorder and ADHD. (Id.) Lastly, Dr. Rose stated that Claimant's ability to acquire and use information was markedly impaired and his ability to attend to and complete tasks was moderately to markedly impaired. (Id.)

Second, with respect to Dr. Long's August 13, 2013 evaluation, Claimant attained a full scale IQ of 68 and a perceptual reasoning index score of 57 on a WISC-VI administered that day. (Doc. no. 18-2, p. 5.) Dr. Long wrote that "[o]verall, based on WISC-IV's general cognitive index, [Claimant] can be expected to perform at a level which is significantly lower than same aged peers." (Id. at 6.) On the spelling sub-test, Claimant scored at the second percentile. (Id. at 7.) Dr. Long additionally noted Claimant's difficulty with concentration, listening skills, and attending. (Id. at 9.) Dr. Long determined Claimant had "poor ability with tasks involving sustained attention, short term memory and concentration. The corresponding Index score was 68." (Id. at 5.)

Despite Plaintiff's contention, the Court finds that the additional evidence is not material. First, there is not a reasonable possibility the new IQ scores would change the ALJ's finding that Claimant did not meet Listings 112.05(D) or (E)(2). Although the full scale IQ of 68 attained on Dr. Long's August 2013 evaluation satisfy these Listings, it is inconsistent with the full scale IQ score of 81 attained on Dr. Rose's evaluation from just

one month earlier, July 2013.  <u>Lowery</u>, 979 F.2d at 837.  The full scale IQ score reported by Dr. Rose does not satisfy Listing 112.05(D) or (E)(2).

Moreover, even if the Court were to assume that the new IQ score was material, which it is not, the additional evidence is also not material because it does not relate to the time period under consideration by the ALJ, i.e. December 29, 2009 to December 16, 2011.  With respect to both exams, Drs. Rose and Long do not provide any indication that Claimant's limitations or diagnoses existed during the time period under consideration by the ALJ, such as by basing their conclusions on particular treatment records from that time period.  <u>Cf.</u> <u>Lipscomb</u>, 199 F. App'x at 907.  Instead, Drs. Rose and Long diagnosed Plaintiff's condition as it existed at the time of their examinations in July and August 2013, respectively.  (<u>See</u> doc. nos. 18-1, 18-2.)  Because the exams do not relate to the time period under consideration by the ALJ and are not material, a remand is not appropriate in this case.  42 U.S.C. § 405(g).

**C.      The ALJ Properly Determined that Claimant Did Not Functionally Equal the Listings.**

Plaintiff argues the ALJ erroneously concluded that Claimant did not functionally equal the Listings because Claimant does not have a "marked" limitation in the functional domains of (1) acquiring and using information and (2) attending and completing tasks. (Pl's Amended Br., pp. 5-7.)

Functional equivalence can be found by assessing a child's overall functional limitations that result from her severe impairment or combination of impairments.  20 C.F.R. § 416.926a.  In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do."  <u>Id.</u>

§ 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [one]self; and (6) health and physical well-being. Id. Functional equivalence requires a "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a).

A marked limitation is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that "interferes very seriously" with a claimant's ability to initiate, sustain, or complete activities. Id. §§ 416.926a(e)(2)-(3). However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function." Id. § 416.926a(e)(3).

Based on statements in Dr. Rose's July 2013 exam, and Dr. Long's 2011 and 2013 exams, Plaintiff asserts that Claimant has at least a marked limitation, and possibly an extreme limitation in the domain of acquiring and using information, and a marked limitation in the domain of attending and completing tasks. Dr. Rose's July 2013 exam and Dr. Long's August 2013 exam are not material for two reasons. First, they do not relate to the time period under consideration by the ALJ. Enix, 461 F. App'x at 863. Second, even if they did relate to the relevant time period, they are not material because there is not a reasonable possibility that Dr. Rose's opinions would change the ALJ findings as to whether Claimant functionally equaled Listings. Dr. Rose stated that Claimant's ability to acquire and use information was markedly impaired but his ability to attend to and complete tasks was merely "moderately to markedly impaired." (Doc. no. 18-1, p. 5.) These statements fail to satisfy the requirement that Claimant show he

has two "marked" limitations in the six domains, as his ability to attend to and complete tasks is less than markedly impaired. C.F.R. §§ 416.926a(a), 416.926(b)(1). Therefore, to the extent Plaintiff asserts that these 2013 exams warrant a sentence six remand because they contain opinions about Plaintiff's functional limitations, Plaintiff is mistaken.

As to Dr. Long's 2011 exam, Plaintiff advances two reasons why the results show that the ALJ's decision is not supported by substantial evidence. First, Claimant had a perceptual reasoning index score of 63 and was diagnosed with mild mental retardation, both of which show a marked limitation in the domain of acquiring and using information. (Pl's Amended Br., p. 7.) Second, Dr. Long noted significant difficulty in verbal, nonverbal and working memory, which shows a marked limitation in the domain of attending and completing tasks. (Id.) In his decision, the ALJ properly considered all of the relevant evidence, including Dr. Long's 2011 exam, and correctly found based on substantial evidence that Plaintiff did not have marked limitations in the domains of acquiring and using information and attending and completing tasks.

The ALJ first found that Claimant has "less than marked limitation in acquiring and using information." R. 27. The ALJ noted that Claimant was placed in special education classes because of his borderline IQ, however Dr. Trasmonte's treatment notes showed that Plaintiff "did well in first grade" after being placed in these classes. R. 26, 27, 592. Indeed, school records show that Claimant's grades in January 2010, when he was in second grade, were an 88 in reading, an 88 in language arts, a 92 in math, a 95 in science, a 92 in social studies, and a 95 in health. R. 25, 182. Plaintiff's teacher described him as having "good adaptive skills and a positive attitude." R. 25, 182.

Additionally "he works well with others and is well liked by his peers." R. 25, 182. Claimant "can recall details and answer questions pertaining to the text," as long as the text is read aloud to him. R. 25, 182. Moreover, the ALJ also found important Ms. Bailey's more recent statement, as referenced above, that Claimant is a "great student who is eager to learn." R. 26, 27, 596.

The ALJ next found that Claimant has "less than marked limitation in attending and completing tasks." R. 28. The ALJ acknowledged that Claimant "got off to a rough start in school," but noted that "medication and growing up have lessened the impact of his difficulties with attention." Id. Indeed, as noted above and by the ALJ, Dr. Trasmonte's notes showed that Claimant had a good attention span on June 9, 2011, and has been able to pay attention without any problems since starting on Concerta on May 20, 2010. R. 25, 572. Additionally, the ALJ discussed Dr. Carswell's statements in his August 2, 2010 Childhood Mental Impairment Questionnaire that Claimant was compliant in taking Concerta and had no functional limitations associated with ADHD. R. 25, 554. The ALJ next noted Claimant's testimony that he can play video games for an hour at a time, take a short break, and play for another hour. R. 28, 50-51. Lastly, the ALJ noted that Claimant's abilities in school, including his ability to do homework, has improved with age and through medication, culminating in his progression through each subsequent grade level, on time, through the special education program. R. 28, 320, 596. Indeed, in February 2002, Claimant's second grade teacher noted that he "does not have trouble with hy[p]reactivity as he did last year" and "his attention span is improving this year." R. 25, 182-83. Additionally, although Claimant was below average in speaking,

writing, math, and reading, certain areas in each of these subjects were on grade level.  R. 25, 183.

In sum, the ALJ properly considered all the relevant evidence in determining whether Claimant functionally equaled the listings, including Dr. Long's 2011 exam, and determined that he did not have a "marked" limitation in either acquiring and using information or attending and completing tasks.  20 C.F.R. § 416.926a.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 27th day of May, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA